IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| VANESSA JACKSON o/b/o Z.L.J., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:13-cv-0091-REL-SSA |
| | ) |
| CAROLYN COLVIN, Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Vanessa Jackson, on behalf of her minor son Z.L.J, seeks review of the final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income benefits under Title XVI of the Social Security Act ("the Act"). Plaintiff argues that the Administrative Law Judge (ALJ) (1) erred when he found that Z.L.J. has one severe impairment, and (2) erred when he found that Z.L.T. has a marked limitation in only one domain. I find that the substantial evidence in the record as a whole supports the ALJ's finding that Z.L.J. is not disabled. Therefore, plaintiff's motion for summary judgment will be denied and the decision of the Commissioner will be affirmed.

## I.     BACKGROUND

On December 21, 2010, plaintiff protectively applied for supplemental security income benefits alleging that Z.L.J. had been disabled since April 1, 2010 (Tr. 111-16). Plaintiff alleged that Z.L.J. is disabled due to an attention deficit hyperactivity disorder (ADHD) (Tr. 133). Plaintiff's application was denied on February 15, 2011 (Tr. 76-79). On February 16, 2012, a hearing was held before an ALJ (Tr. 26-74). On March 7, 2012, the ALJ found that Z.L.J. is not under a "disability" as defined in the Act (Tr. 6-25). On January 5, 2013, the Appeals Council denied plaintiff's request for review (Tr. 1-4). Therefore, the decision of the ALJ stands as the

final decision of the Commissioner.

## II. *STANDARD FOR JUDICIAL REVIEW*

Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner. The standard for judicial review by the federal district court is whether the decision of the Commissioner was supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Mittlestedt v. Apfel, 204 F.3d 847, 850-51 (8th Cir. 2000); Johnson v. Chater, 108 F.3d 178, 179 (8th Cir. 1997); Andler v. Chater, 100 F.3d 1389, 1392 (8th Cir. 1996). The determination of whether the Commissioner's decision is supported by substantial evidence requires review of the entire record, considering the evidence in support of and in opposition to the Commissioner's decision. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989). "The Court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Wilcutts v. Apfel, 143 F.3d 1134, 1136 (8th Cir. 1998) (citing Steadman v. Securities & Exchange Commission, 450 U.S. 91, 99 (1981)).

Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. at 401; Jernigan v. Sullivan, 948 F.2d 1070, 1073 n. 5 (8th Cir. 1991). However, the substantial evidence standard presupposes a zone of choice within which the decision makers can go either way, without interference by the courts. "[A]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Id.; Clarke v. Bowen, 843 F.2d 271, 272-73 (8th Cir. 1988).

## III. *BURDEN OF PROOF AND SEQUENTIAL EVALUATION PROCESS*

An individual under the age of 18 claiming disability has the burden of proving that he has a medically determinable physical or mental impairment that results in marked and severe functional limitations and that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 month. 42 U.S.C. § 1382c(A)(1)(C).

The Social Security Administration has promulgated detailed regulations setting out a sequential evaluation process to determine whether a claimant is disabled. These regulations are codified at 20 C.F.R. §§ 416.920, et seq. The three-step sequential evaluation process used by the Commissioner is outlined in 20 C.F.R. § 416.924 and is summarized as follows:

1. Is the claimant performing substantial gainful activity?

   Yes = not disabled.
   No = go to next step.

2. Does the claimant have a severe impairment or a combination of impairments which limits his ability to perform age-appropriate activities?

   No = not disabled.
   Yes = go to next step.

3. Does the impairment meet or medically equal a listed impairment in Appendix 1?

   Yes = disabled.
   No = go to the second part of the step.

4. Does the impairment functionally equal any listed impairment based on having either two marked limitations or one extreme limitation in the following domains?

   - Acquiring and using information;
   - Attending and completing tasks;
   - Interacting and relating with others;
   - Moving and manipulating objects; and
   - Caring for oneself.

   Yes = disabled.
   No= not disabled.

## IV. THE RECORD

The record consists of the testimony of Z.L.J. and plaintiff, in addition to documentary evidence admitted at the February 16, 2012 hearing.

## A. ADMINISTRATIVE REPORTS

Because plaintiff filed no prior claims on behalf of Z.L.J. and Z.L.J. has never worked, there are no administrative reports.

## B. SUMMARY OF MEDICAL RECORDS

As summarized by both plaintiff and the Commissioner, the medical record reflects diagnosis of and treatment for ADHD.

## C. SUMMARY OF TESTIMONY

During the February 16, 2012 hearing, plaintiff and Z.L.J. testified.

### 1. Z.L.J.'s Testimony

At the hearing, Z.L.J. testified that he made A's, B's, C's, and one F in school during the prior semester. Z.L.J. denied ever repeating a grade in school (Tr. 31). Z.L.J. stated that he has a library card, he reads books, and he is able to summarize what he has read for the ALJ (Tr. 34). Z.L.J. related that he eats lunch at school and has friends (Tr. 36). Z.L.J. said that he watches television, rides a bike, swims, plays basketball, and plays football (Tr. 39, 41-42, 46). Z.L.J. said that he goes to the movies, that the last movie he saw was "Red Tails," and that he is able to discuss the movie's plot with the ALJ (Tr. 39).

Z.L.J. testified that he takes medication and sees a therapist for his anger (Tr. 36-38). Z.L.J. said that he was suspended twice from his previous school, Satchel Paige Elementary School, for leaving class without permission. Z.L.J. reported that he previously attended Gordon Parks Elementary School. Z.L.J. was able to correctly identify both Gordon Parks and Satchel Paige (Tr. 32). Z.L.J said that he gets into trouble when he is angry and talks back (Tr. 35, 45).

**2.     Plaintiff's Testimony**

Plaintiff testified that Z.L.J. has difficulty controlling his emotions, is forgetful, and experiences nightmares (Tr. 55). Plaintiff said that she receives calls from Z.L.J.'s school approximately three times a week after he throws a temper tantrum and talks back to his teachers (Tr. 47). Plaintiff stated that this year Z.L.J. received two out-of-school suspensions for being disrespectful to the teacher and fighting with another child, and several more in-school suspensions (Tr. 48). Plaintiff said that Z.L.J. is not in special education for any subject and does not currently have an individual education plan (IEP) (Tr. 58). Plaintiff also said that Z.L.J. missed several football games as a result of his behavioral problems (Tr. 49, 60-61).

Plaintiff reported that Z.L.J. has typical spats with his siblings, is emotional, does not take responsibility for his actions, and has low self-esteem (Tr. 49-50). Plaintiff said that the child reached his developmental milestones at a normal rate, and performed well at daycare (Tr. 56). Plaintiff said that Z.L.J. has a case manager and has seen a therapist and a psychiatrist during the previous two years (Tr. 53-54). Plaintiff testified Z.L.J. takes medication for ADHD and experiences mood swings (Tr. 50, 59). Plaintiff said that Z.L.J.'s behavior is improved with medication but the improvement can be "up and down" (Tr. 50). Plaintiff testified that she reminds Z.L.J. to take baths, change his underclothes, and do his chores (Tr. 51-52).

## V.     FINDINGS OF THE ALJ

On March 7, 2012, ALJ William G. Horne issued his opinion. The ALJ found that Z.L.J. has not engaged in substantial gainful activity since December 21, 2010, the application date (Tr. 12). The ALJ found that Z.L.J.'s ADHD is a severe impairment (Tr. 12). The ALJ found that Z.L.J. does not have an impairment that meets or medically equals the severity requirements of a Listing (Tr. 12). Furthermore, the ALJ found that Z.L.J. does not have an impairment that

5

functionally equals the severity requirements of a Listing. Specifically, the ALJ found that Z.L.J. has less than a marked limitation in acquiring and using information; less than a marked limitation in attending and completing tasks; a marked limitation when interacting with and relating to others; no limitation in movement and manipulation; less than a marked limitation in caring for himself; and less than a marked limitation in health and physical well-being (Tr. 12-22). Therefore the ALJ concluded that Z.L.J. is not disabled (Tr. 22).

## VI. ANALYSIS

### A. SEVERE IMPAIRMENTS

Plaintiff first argues that the ALJ erred by not finding Z.L.J.'s mood and adjustment disorders are severe impairments. The Commissioner responds that these impairments are not distinct from Z.L.J.'s ADHD and that the ALJ accounted for all of Z.L.J.'s mental impairments when determining whether Z.L.J.'s ADHD meets, medically equals, or functionally equals the severity of a Listing.

At step 2 of the sequential evaluation, an individual must have a severe impairment or combination of impairments that lasted or is expected to last for at least twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 404.1509 and 416.920(a)(4)(ii) (describing step two) and 416.909 (describing durational requirements). A medically determinable impairment is an impairment that results from anatomical, physiological, or psychological abnormalities and must be shown by medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques. 20 C.F.R. §§ 404.1529(b) and 416.929(b). Additionally, a medically determinable impairment is severe if it more than minimally affects the individual's ability to perform work-related activities. Nguyen v. Chater, 75 F.3d 429, 431 (8th Cir. 1996); 20 C.F.R. §§ 404.1521 and 416.921; Social Security Ruling (SSR) 1996-3p. The burden of

6

establishing a severe impairment is on the individual. Nguyen, 75 F.3d at 430-31. Although severity is not an onerous requirement, it is also not a toothless standard, and the Eighth Circuit has often upheld the Commissioner's finding that a claimant failed to meet this standard. Kirby v. Astrue, 500 F.3d 705, 708 (8th Cir. 2007) (citing Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cir.1989)).

In determining whether an individual's physical or mental impairment or combination of impairments is of sufficient medical severity that it could be the basis of eligibility under the law, the ALJ should consider the combined effect of all of the individual's impairments without regard to whether a single impairment, when taken alone, would be of sufficient severity. If the ALJ finds a medically severe combination of impairments, the combined impact of the impairments must be considered throughout the disability process. 20 C.F.R. §§ 404.1523 and 416.923.

First, I note that when plaintiff was questioned about what is Z.L.J.'s disabling illnesses, injuries, or conditions, she said "ADHD." Plaintiff did not mention a mood disorder or an adjustment disorder (Tr. 133).

Second, Z.L.J.'s initial diagnosis was ADHD, combined type. More recently, the child has also been diagnosed with an affective disorder, either a mood disorder or an adjustment disorder. Initially, Z.L.J. was prescribed Intuniv, and more recently, he has been prescribed Depokate (Tr. 193-204, 213-17, 242).

Third, on February 11, 2011, J. Edd Bucklew, Ph.D., a State of Missouri Disability Determination Services (DDS) psychological consultant, completed a *Childhood Disability Evaluation Form* in which he opined that Z.L.J.'s only impairment is ADHD (Tr. 229-33).

I note that at the hearing, counsel acknowledged that "[i]t appears that maybe [the

ADHD] is where a lot of [Z.L.J.'s] misbehaviors are coming from, but there's also a mood disorder that's been diagnosed and is being treated. So, it's kind of hard to separate what's what" (Tr. 73).

Next, and most important, the ALJ discussed the entirety of the record including (1) the objective medical evidence, including the reports that led to the diagnosis of an affective disorder and the prescription of Depokate (Tr. 186-206, 207-19, 220-28, 238-64); (2) the reports from Z.L.J's schools (Tr. 153-70, 171-78, 179-80, 181-85); (3) the reports from Z.L.J.'s mother (Tr. 117-28, 139-41); (5) the testimony by Z.L.J.'s mother (Tr. 47-74); and (6) the testimony by Z.L.J (Tr. 29-46).

Finally, it is immaterial whether the ALJ finds that an impairment to be severe, so long as the step-three evaluation includes the individual's functional capacity in total. Here, although the ALJ found one severe impairment, the judge devoted a considerable amount of his decision to a discussion of the evidence as it relates to plaintiff's mental status. While the focus of the ALJ's discussion was the child's ADHD, most of the parameters do not discriminate as to the source of deficits. For example, memory and concentration measurements do not consider the source of the deficits; instead, these modalities consider the cognitive ability. Here, the ALJ's step-three evaluation includes non-exertional limitations caused by plaintiff's mental impairments (e.g., less than marked limitation in acquiring and using information, less than marked limitation in attending and completing tasks, and marked limitation in interacting and relating with others) (Tr. 15-19).

I find that substantial evidence in the record as a whole supports the ALJ's analysis.

**B.    FUNCTIONALLY EQUALS**

Plaintiff next argues that the ALJ failed to properly assess the impact of Z.L.J.'s mental

impairments on the six-domains. Specifically, plaintiff argues that the child's mental impairments cause a marked limitation in interfacing and relating with others, and also a marked limitation in attending and completing tasks. The Commissioner responds that the ALJ reviewed the record as a whole and found that the child has less than a marked limitation in attending and completing tasks. The ALJ considered Dr. Bucklew's medical opinion, the medical evidence, Z.L.J.'s response to treatment, the school reports, the hearing testimony, and Z.L.J.'s daily activities.

Medical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment, in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis. SSR 1996-5; see 20 C.F.R. §404.1513(a) (defining "acceptable medical source"). Generally, the opinions of an examining psychologist or physician should be given greater weight that the opinions of a source who has not examined the claimant. Shontos v. Barnhart, 328 F.3d 418, 425 (8th Cir. 2003).

The opinion of a treating physician is "generally given controlling weight, but is not inherently entitled to it." Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) (quoting Hacker v. Barnhart, 439 F.3d 934, 937 (8th Cir. 2006). An ALJ may elect not to give controlling weight to a treating physician when the opinions are "not supported by diagnoses based on objective evidence" or when the opinions are "inconsistent with or contrary to the medical evidence as a whole." Id. A treating physician's opinions also may be entitled to less weight when the opinions are not supported by his or her own treatment notes. Owen v. Astrue, 551 F.3d 792, 789-99 (8th Cir. 2008).

Although the ALJ began with Dr. Bucklew's February 11, 2011 assessment, the judge

9

made several modifications to the advantage of Z.L.J and his claim. For example, although the DDS consultant rated Z.L.J. as having no limitation in attending and acquiring information, no limitation in caring for himself, and no limitation in health and physical well-being, the ALJ found a less-than-marked limitation in these three domains; and although Dr. Bucklew found less-than-a-marked limitation in the child's interacting with and relating to others, the ALJ found a marked limitation in this domain and explained the modifications. The ALJ raised the DDS consultant's ratings in four of the six domains.

The ALJ pointed out that plaintiff's statements, the teacher reports, and the medical records, all show improvement in Z.L.J.'s behavior while under treatment. For example, on questioning during the hearing, plaintiff acknowledged that Z.L.J. is in mainstream classes and does not have an IEP; and that the child was able to discuss a recently read book with the ALJ.

After a complete review of the record, the ALJ found that Z.L.J.'s mental problems are severe but that they only result in one marked limitation.

The administrative regulations do not require an individual to be free of symptoms to be found not disabled. Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) (the mere presence of a mental disturbance is not disabling *per se*, absent a showing of severe functional loss establishing an inability to engage in substantial gainful activity). Even where an individual is prescribed antidepressant drugs, this is not conclusive evidence that the mental impairment is disabling. Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989) (prescription of antidepressant drugs does not show that the claimant is disabled).

An ALJ makes his or her own assessment from a review of the record as a whole. Steed v. Astrue, 524 F.3d 872, 865 (8th Cir. 2008) (ALJ's residual functional capacity finding based upon diagnostic tests and examination results); Halverson v. Astrue, 600 F.3d 922, 933-34 (8th

Cir. 2010).

Evidence that both supports and detracts from the Commissioner's decision should be considered, and an administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. Finch v Astrue, 547 F.3d 933, 935 (8th Cir. 2008). A court should disturb an ALJ's decision only when it falls outside the available "zone of choice," and a decision is not outside that zone of choice simply because the court may have reached a different conclusion had the court been the fact finder in the first instance. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011); McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome"). The Eighth Circuit repeatedly has held that a court should "defer heavily to the findings and conclusions" of the Commissioner. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010); Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001).

In conclusion, I find that substantial evidence of the record as a whole supports the ALJ's finding that Z.L.J. has only one marked limitation and is not disabled.

## VII. CONCLUSIONS

Based on all of the above, I find that the substantial evidence in the record as a whole supports the ALJ's decision finding plaintiff not disabled. Therefore, it is

ORDERED that plaintiff's motion for summary judgment is denied. It is further

ORDERED that the decision of the Commissioner is affirmed.

                                                                                */s/ Robert E. Larsen*
                                                                                ROBERT E. LARSEN
                                                                                United States Magistrate Judge

March 17, 2014
Kansas City, Missouri